UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA :
:
*versus* : CRIMINAL NO. 15-
:
LINDA D. WHITE AKA Lynnda White. :

## PLEA AGREEMENT

The United States Attorney's Office for the Middle District of Louisiana ("the United States") and LINDA D. WHITE ("the defendant") hereby enter into the following plea agreement pursuant to Fed. R. Crim. P. 11(c).

A. **THE DEFENDANT'S OBLIGATIONS**

1. **Guilty Plea**

The defendant agrees to enter a plea of guilty to a Bill of Information charging her with Alteration and Falsification of Records in a Federal Investigation in violation of 18 U.S.C. § 1519.

2. **Financial Information**

The defendant agrees to fully and truthfully complete the financial statement provided to her by the United States and to return the financial statement to the United States within ten days of this agreement being filed with the Court. Further, the defendant agrees to provide the United States with any information or documentation in her possession regarding her financial affairs and to submit to a debtor's examination upon request. Any financial information provided by the defendant may be used by the United States to collect any

financial obligations imposed in this prosecution and may be considered by the Court in imposing sentence.

3. **Waiver of Indictment**

The defendant agrees to waive indictment in open court at arraignment.

B. **UNITED STATES' OBLIGATIONS**

1. **Non-prosecution of Charges**

The United States agrees that, if the Court accepts the defendant's guilty plea, it will not prosecute the defendant for any offense related to the offense charged in the Bill of Information.

2. **Motion for Third Point for Acceptance of Responsibility**

The United States acknowledges that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of her intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently. The United States therefore agrees that, if the Court finds that the defendant qualifies for a two-level decrease in offense level for acceptance of responsibility under USSG § 3E1.1(a) and, prior to the operation of USSG § 3E1.1(a), the defendant's offense level is 16 or greater, the United States will move the Court pursuant to USSG § 3E1.1(b) to decrease the defendant's offense level by one additional level. The United States reserves the right to object to a decrease in offense level for acceptance of responsibility based on information received by the United States after the effective date of this agreement,

including information that the defendant failed to timely submit the financial statement required by Section A(2) of this agreement.

## C. SENTENCING

### 1. Maximum Statutory Penalties

The maximum possible penalty is a term of imprisonment of 20 years, a fine of up to $250,000, and a term of supervised release of five years.

In addition to the above, the Court must impose a special assessment of $100 which is due at the time of sentencing. The Court may also order restitution.

### 2. Supervised Release

Supervised release is a period following release from imprisonment during which the defendant's conduct is monitored by the Court and the United States Probation Office and during which the defendant must comply with certain conditions. Supervised release is imposed in addition to a sentence of imprisonment, and a violation of the conditions of supervised release can subject the defendant to imprisonment over and above any period of imprisonment initially ordered by the Court for a term of up to three years, without credit for any time already served on the term of supervised release.

### 3. Sentencing Guidelines

The Court will determine in its sole discretion what the defendant's sentence will be. While the Court must consider the United States Sentencing Guidelines in imposing sentence, the Sentencing Guidelines are not binding on the Court. The Court could impose

any sentence up to the maximum possible penalty as set out above despite any lesser or greater sentencing range provided for by the Sentencing Guidelines.

4. **Agreement Regarding Sentencing**

The defendant and the United States agree, pursuant to 18 U.S.C. § 3663(a)(3), that the Court shall not be limited to the count of conviction for purposes of ordering restitution. As a condition of this plea agreement, the defendant agrees that the Court will order full restitution in an amount to be determined by the Court for her conduct outlined in the factual basis. Otherwise, except as set forth in this agreement, the United States makes no promises, representations, or agreements regarding sentencing. In particular, the United States reserves the right to present any evidence and information to the Court and the United States Probation Office regarding sentencing.

D. **FACTUAL BASIS**

The United States and the defendant stipulate to the following facts:

The United States Department of Labor (US-DOL), a department or agency of the United States, administers the Immigration and Nationality Act (INA) which covers agricultural employers seeking to hire temporary agricultural workers using H-2A visas. The H-2A temporary agricultural program allows agricultural employers who anticipate a shortage of domestic workers to bring nonimmigrant foreign workers to the United States to perform agricultural labor or services of a temporary or seasonal nature. Any employer who has been certified for a specific number of H-2A jobs must have initially attempted to find U.S. workers who were able, willing, and qualified to fill these positions. The US-DOL requires that, in an attempt to find such domestic workers, the employer place newspaper advertisements within a multi-state region of traditional or expected labor supply.

Linda D. White, through her company, Linda White & Associates (LWA), in ~~Denham Springs~~ Livingston, Louisiana, within the Middle District of Louisiana, served as an authorized agent for numerous agricultural employers, primarily sugar cane farmers, needing to hire foreign labor through the H-2A visa program. From approximately January 2010 until January 2013, White filed with the US-DOL ~~approximately 959~~ numerous applications for H-2A workers. White

charged her clients between $450 and $675 to cover her estimated costs to place newspaper advertisements for domestic workers.

In approximately August 2012, US-DOL selected for audit 18 of White's H-2A applications and demanded, among other documentation, copies of receipts of all newspaper advertisements placed on behalf of these 18 clients. US-DOL requirements mandated that, for each client, advertisements be placed with four separate newspapers. After White received notification of the US-DOL audit, she altered and falsified numerous newspaper advertisement receipts and subsequently submitted these fraudulent documents to US-DOL. When she submitted these receipts, White was representing that she had placed these newspaper advertisements on behalf of her clients when, in fact, she had not placed the ads. White's clients had paid her to place the advertisements and had relied on White to comply with US-DOL advertising requirements associated with obtaining H-2A temporary workers.

For example, one of these audited H-2A applications was for Company A. White was the authorized agent for Company A and requested four H2-A farm workers for the period from July 25, 2011 to May 25, 2012. US-DOL demanded copies of all newspaper advertisement receipts, among other documentation, placed by White for the company. In or about September 2012, White, on behalf of the company, sent to US-DOL the following four advertisement receipts, all dated June 7, 2011: (1) a receipt for $47.60 from The Courier in Russellville, Arkansas; (2) a receipt for $86.52 from The Facts in Clute, Texas; (3) a receipt for $163.38 from the Advocate in Baton Rouge, Louisiana; and (4) a receipt for $24.70 from the Delta Democrat Times in Greensville, Mississippi. White represented to US-DOL that these advertisements had been placed in these newspapers and that she had paid the specified advertising fees when, in fact, she had not placed the advertisements and had not paid the advertising fees. The receipts were not legitimate receipts and were fraudulently created and submitted by White to US-DOL with the intent to impede, obstruct, and influence the investigation of a matter within the jurisdiction of the US-DOL, namely the US-DOL audit. Furthermore, White had been paid by Company A to place these newspaper advertisements.

After the audit of the initial 18 H-2A temporary agricultural program applications, US-DOL analyzed another 50 applications that White submitted to US-DOL and discovered that, for the majority of these applications, White had not placed newspaper advertisements for her clients even though she had been paid to do so.

The defendant admits that, to the best of her knowledge and belief, the stipulated statement of facts is true and correct in all respects. The United States and the defendant agree that, had this matter gone to trial, the United States could have proved such facts. The

United States and the defendant further agree that such facts are sufficient to support conviction of the offense to which the defendant has agreed to plead guilty. The defendant understands that, by the terms of USSG § 6B1.4, the Court is not limited by the stipulated facts for purposes of sentencing. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation and any other relevant information.

E. **BREACH AND ITS CONSEQUENCES**

1. **Conduct Constituting Breach**

Any of the following actions by the defendant constitutes a material breach of this agreement:

    a.    failing to plead guilty to the Bill of Information at arraignment;

    b.    representing, directly or through counsel, to the United States or the Court that she will not plead guilty to the Bill of Information;

    c.    moving to withdraw her guilty plea;

    d.    filing an appeal or instituting other post-conviction proceedings not authorized in Section F(2);

    e.    disputing or denying guilt of the offense to which the defendant has agreed to plead guilty or denying or disputing any fact contained in the stipulated factual basis;

    f.    failing or refusing to waive indictment in open court at arraignment;

    g.    concealing or disposing of assets with the specific intent of shielding such assets from forfeiture;

    h.    providing false, misleading, or incomplete information or testimony, including financial information and testimony provided pursuant to Section A(2), to the United States; or

    i.  violating the terms of this agreement in any other manner.

 2. **Consequences of Breach**

In the event of a breach by the defendant, the United States is relieved of its obligations under the agreement. In particular, the United States may prosecute the defendant for any criminal offense. In addition, any statements and information provided by the defendant pursuant to this agreement or otherwise, and any information and evidence derived therefrom, may be used against the defendant in this or any other prosecution or proceeding without limitation. Such statements and information include, but are not limited to, the plea agreement itself (including the factual basis contained in Section D), statements made to law enforcement agents or prosecutors, testimony before a grand jury or other tribunal, statements made pursuant to a proffer agreement, statements made in the course of any proceedings under Rule 11, Fed. R. Crim. P. (including the defendant's entry of the guilty plea), and statements made in the course of plea discussions. The defendant expressly and voluntarily waives the protection afforded by Fed. R. Evid. 410 as to any statements made by her personally (but not as to statements made by her counsel). The defendant is not entitled to withdraw her guilty plea.

 3. **Procedure for Establishing Breach**

The United States will provide written notice to the defendant or her attorney if it intends to be relieved of its obligations under the agreement as a result of a breach by the defendant. After providing such notice, the United States may institute or proceed with any charges against the defendant prior to any judicial determination regarding breach. However,

the United States will obtain a judicial determination regarding breach prior to using statements and information provided by the defendant or any act of producing documents or items by the defendant pursuant to this agreement, or any evidence or information derived therefrom, in its case-in-chief in a criminal trial or in sentencing the defendant in this case. The standard of proof in any proceeding to determine whether the plea agreement has been breached is preponderance of the evidence. To prove a breach, the United States may use (1) any and all statements of the defendant, (2) any and all statements of her counsel to the Court (including the United States Probation Office), and (3) any representation by defense counsel to the United States that the defendant will not plead guilty.

F.  **WAIVERS BY THE DEFENDANT**

   1.  **Waiver of Trial Rights**

By pleading guilty, the defendant waives the right to plead not guilty or to persist in a not guilty plea and waives the right to a jury trial. At a trial, the defendant would have the trial rights to be represented by counsel, to confront and examine adverse witnesses, to be protected against compelled self-incrimination, to testify and present evidence, to compel the attendance of witnesses, and to have the jury instructed that the defendant is presumed innocent and the burden is on the United States to prove the defendant's guilt beyond a reasonable doubt. By waiving her right to a trial and pleading guilty, the defendant is waiving these trial rights.

2. **Waiver of Appeal and Collateral Remedies**

Except as otherwise provided in this section, the defendant hereby expressly waives the right to appeal her conviction and sentence, including any appeal right conferred by 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and to challenge the conviction and sentence in any post-conviction proceeding, including a proceeding under 28 U.S.C. § 2241, 28 U.S.C. § 2255, or 18 U.S.C. § 3582(c)(2). This waiver applies to any challenge on appeal or in any post-conviction proceeding to any aspect of the defendant's sentence, including imprisonment, fine, special assessment, restitution, forfeiture or the length and conditions of supervised release or probation. The defendant, however, reserves the right to appeal the following: (a) any sentence which is in excess of the statutory maximum; (b) any sentence which is an upward departure pursuant to the Sentencing Guidelines; and (c) any non-Guidelines sentence or "variance" which is above the guidelines range calculated by the Court. Notwithstanding this waiver of appeal and collateral remedies, the defendant may bring any claim of ineffectiveness of counsel.

3. **Waiver of Statute of Limitations**

The defendant hereby waives all defenses based on the applicable statutes of limitation as to the offense charged in the Bill of Information and all offenses that the United States has agreed not to prosecute, as long as such offenses are not time-barred on the effective date of this agreement. The defendant likewise waives any common law, equitable, or constitutional claim of pre-indictment delay as to such offenses, as long as such offenses are not time-barred on the effective date of this agreement. The waivers contained in this

paragraph will expire one year after the date of any of the following: (1) a judicial finding that defendant has breached the plea agreement; (2) the withdrawal of any plea entered pursuant to this plea agreement; or (3) the vacating of any conviction resulting from a guilty plea pursuant to this plea agreement.

4. **Waiver of Speedy Trial Rights**

The defendant hereby waives any common law, equitable, or constitutional claim regarding post-indictment delay as to the offense charged in the Bill of Information. The waiver contained in this paragraph will expire one year after the date of any of the following: (1) a judicial finding that defendant has breached the plea agreement; (2) the withdrawal of any plea entered pursuant to this plea agreement; or (3) the vacating of any conviction resulting from a guilty plea pursuant to this plea agreement.

G. **EFFECT OF AGREEMENT**

1. **Effective Date**

This agreement is not binding on any party until signed by the defendant, defendant's counsel, and an attorney for the United States. Once signed by the defendant, her counsel, and an attorney for the United States, the agreement is binding on the defendant and the United States.

2. **Effect on Other Agreements**

This agreement supersedes any prior agreements, promises, or understandings between the parties, written or oral, including any proffer agreement.

3. **Effect on Other Authorities**

The agreement does not bind any federal, state, or local prosecuting authority other than the United States Attorney's Office for the Middle District of Louisiana.

4. **Effect of Rejection by Court**

Pursuant to Fed. R. Crim. P. 11, the Court may accept or reject this plea agreement. If the Court rejects the plea agreement, the plea agreement is no longer binding on the parties and is not binding on the Court. If the Court rejects the plea agreement, the defendant will be given the opportunity to withdraw her plea and such withdrawal will not constitute a breach of the agreement. If the defendant does not withdraw her plea following rejection of the plea agreement, the disposition of the case may be less favorable to the defendant than contemplated by the plea agreement.

H. **REPRESENTATIONS AND SIGNATURES**

1. **By The Defendant**

I, LINDA D. WHITE, have read this plea agreement and have discussed it with my attorney. I fully understand the agreement and enter into it knowingly, voluntarily, and without reservation. I have not been threatened, intimidated, pressured, or coerced in any manner. I am not under the influence of any substance or circumstance that could impede my ability to understand the agreement and its consequences.

I affirm that absolutely no promises, agreements, understandings, or conditions have been made, agreed to, or imposed by the United States in connection with my decision to plead guilty except those set forth in this agreement.

I acknowledge that no promises or assurances have been made to me by anyone as to what my sentence will be. I understand that representations by my attorney (or anyone else) regarding application of the Sentencing Guidelines and/or my possible sentence are merely estimates and are not binding on the Court.

I have read the Bill of Information and have discussed it with my attorney. I fully understand the nature of the charge. I understand that I am entitled, under the Fifth Amendment of the United States Constitution, to have the charge instituted by a Grand Jury Indictment.

I have accepted this plea agreement and agreed to plead guilty because I am in fact guilty of the offense charged in the Bill of Information.

I am satisfied with the legal services provided by my attorney and have no objection to the legal representation I have received.

_____  DATE: 04-06-15
LINDA D. WHITE
Defendant

2. **By Defense Counsel**

I have read this plea agreement and have discussed it with my client, LINDA D. WHITE, who is the defendant in this matter. I am satisfied that the defendant understands

the agreement and is entering into it knowingly and voluntarily. The agreement accurately and completely sets forth the entire agreement between the defendant and the United States.

_____    DATE: 4-6-15
BRENT STOCKSTILL
Counsel for Defendant

3. **By the United States**

We accept and agree to this plea agreement on behalf of the United States. The agreement accurately and completely sets forth the entire agreement between the defendant and the United States.

_____    DATE: 1 April 2015
J. WALTER GREEN
United States Attorney
Middle District of Louisiana

_____    DATE: April 1, 2015
J. BRAD CASEY
Special Assistant United States Attorney
Middle District of Louisiana